Jesse W. Wilson and Lola L. Wilson v. Commissioner. H. D. Woolf and Josephine Woolf v. Commissioner.
Wilson v. Commissioner
Docket Nos. 78607, 78706.
United States Tax Court
T.C. Memo 1961-84; 1961 Tax Ct. Memo LEXIS 268; 20 T.C.M. (CCH) 379; T.C.M. (RIA) 61084; March 27, 1961
William P. Fonville, Esq., Republic Bank Bldg., Dallas, Tex., for the petitioners in Docket No. 78607. Harold B. Sanders, Esq., for the petitioners in Docket No. 78706. Harold D. Rogers, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency has been determined in the income tax of petitioners Wilson for the taxable year 1955 in the amount of $8,077.54 and in the income tax of petitioners Woolf for the same year in the amount of $1,462.26. The cases have been consolidated for hearing and opinion. The issue for decision is whether amounts paid by a divorced husband to his divorced *269 wife in the year at issue are deductible by him as amounts paid for her support and maintenance and therefore includible in the income of the divorced wife. Findings of Fact Such facts as have been stipulated are found as fact. The Wilsons are husband and wife who reside in Dallas, Texas, and who filed their joint 1955 income tax return with the district director at that city. The Woolfs are husband and wife who reside at Glorietta, New Mexico, and who filed their original joint income tax return for the taxable year 1955 with the district director at Albuquerque, New Mexico, and an amended return for that year with the district director at Dallas, Texas. In their return for 1955 the Wilsons deducted as alimony the amount of $14,400 paid by Jesse Wilson to Josephine Woolf during that year. The respondent has disallowed the deduction as not constituting the payment of support money within the meaning of section 215 of the Internal Revenue Code of 1954. In their return for 1955 the Woolfs have not included as gross income any of the payments made by Jesse to Josephine. The respondent in computing the deficiency determined against them has included the *270 amount thereof as gross income received by Josephine as support money within the meaning of section 71 of the 1954 Code. On December 21, 1916, Jesse and Josephine were married and remained so until their divorce on November 30, 1936. No children are shown by the record to have been born of their union. At the time of their marriage neither of them owned property which is here in controversy. Jesse has had a wide and varied business experience which in January 1935 and on the date of the divorce included the operation of a "bookie business" and the operation of two loan businesses in Dallas, Texas. During the married life of Jesse and Josephine she had instituted several divorce actions which were either abandoned or dismissed upon their reconciliation. Subsequent to such an action instituted by her in 1927 in their reconciliation Jesse paid to Josephine the amount of $20,000. She thereafter returned a substantial proportion of that amount to him. She had received money in varying amounts from relatives largely through inheritance most of which she either loaned or gave to Jesse who used such money in the purchase of property and to aid him in the conduct of his business. By January *271 of 1935 they had acquired and owned, subject in some instances to encumbrances, real estate of the value on that date of $31,500 exclusive of such encumbrances. Jesse operated and managed the bookie and loan business before mentioned. They owned two used automobiles. Their home was completely furnished and contained valuable bric-a-brac and antiques, all of the approximate value of $10,000. All of the above property, including the businesses mentioned, constituted community property under the law of Texas. On January 30, 1935, having concluded they could no longer live together as husband and wife, Jesse and Josephine executed a separation agreement which apportioned their community property which is as follows: STATE OF TEXAS, COUNTY OF DALLAS: SS. THIS MEMORANDUM OF AGREEMENT, made and entered into this 30th day of January, A.D. 1935, by and between J. W. WILSON, hereinafter called Party of the First Part, and JOSEPHINE G. WILSON, hereinafter called Party of the Second Part, WITNESSETH: WHEREAS, certain differences have arisen between the Party of the First Part and Party of the Second Part such as to make their living together hereafter insupportable; and, WHEREAS, Party *272 of the First Part is indebted to the Party of the Second Part in certain amounts growing out of advances heretofore made by the Party of the Second Part to the Party of the First Part, out of the separate funds and separate property of the Party of the Second Part, said funds having been acquired in part from funds inherited by the Party of the Second Part, and in part from funds acquired by gift by the Party of the Second Part; and, WHEREAS, such settlement of such indebtedness to the Party of the Second Part is covenanted by the Parties hereto to be full consideration for the conveyances hereinafter referred to and for the payments hereinafter covenanted to be made to Party of the Second Part by the Party of the First Part. NOW, THEREFORE, it is herein and hereby contracted, covenanted and agreed as follows: That the Party of the First Part has conveyed to the Party of the Second Part certain lands located and described in accordance with the deeds made by the Party of the First Part to the Party of the Second Part; and, WHEREAS, certain of the deeds are made to lands which at the present time have liens thereon incurred for the benefit of Party of the First Part, and which *273 Party of the First Part has covenanted and does herein covenant and contract to pay off out of his separate funds and estate; and, WHEREAS, Party of the First Part desires to make this expression of his recognition and knowledge of the past that all furniture, furnishings, bric-a-brac, jewelry and other personal property located at No. 6330 Bryan Parkway in the City of Dallas, Texas, or in the hands of or in the possession of, or subject to the authority of, the Party of the Second Part, does belong to the Party of the Second Part as her separate property and estate and that Party of the First Part has no right or claim therein or thereto. Party of the First Part further conveys to the party of the Second Part, the following described insurance policies: American Life Reinsurance Company - No. 58,461 The Guaranty Life Insurance Co. - No. 38023 The Union Central Life Insurance Co. - No. 682892 Illinois Commercial Men's Ass'n, - No. 185396 American National Insurance Company - No. 40316 American National Insurance Company - No. 315787 Union Central Life Insurance Company - No. 682891 Great Southern Life Insurance Company - No. 316509 and covenants that he will at *274 once procure from the insurance companies proper blanks and will properly fill out same listing Party of the Second Part as the irrevocable beneficiary in each and every such insurance policy, and Party of the First Part to have no control in any way over any portion of any such insurance policies which are delivered with the above covenant, and in the event said party of the First Part does not at once properly execute and deliver to the proper insurance companies proper conveyances, carrying into effect, this portion of this contract, then this portion of this contract shall be construed and is covenanted to be a power of attorney to the Party of the Second Part authorizing her in her own right to procure and file with each and every insurance company referred to, proper papers that shall properly vest said Party of the Second Part as the sole and irrevocable beneficiary in each and all of said insurance policies, so that same will be payable to the Party of the Second Part, and without any right of control or change over any portion of any such policy or policies remaining in First Party. The Party of the First Part further covenants and binds himself to pay the premiums on all *275 said insurance policies necessary to keep them in force during the term of his natural life and those policies herein which are term policies which expire unless converted into ordinary life insurance within certain definite terms, the First Party herein covenants that he will convert each and every one of said policies into ordinary life policies at once and in the event of failure of First Party to make such conversions or to make the payments on said policies before delinquent, the Second Party shall have the right to make the conversions and to make the payments and to recover of and from First Party all such payments of such premiums as shall be necessary or proper to keep said premiums in full force and effect and this contract shall create an obligation of debt due by First Party to Second Party for any premiums so paid. It is further covenanted and contracted by the Parties hereto that in lieu of an accounting and settlement of the community property of the Parties and as consideration for the community property now in the possession of the Party of the First Part, that First Party covenants and binds himself to pay to the Second Party the sum of One Hundred Fifty ($150.00) *276 Dollars per month on or before the first day of each and every month from and after the date hereof during the natural life of the Second Party, such payments to be made at the Republic National Bank in Dallas, Texas, and failure to make any such payment shall authorize the Second Party to bring suit against First Party as often as may be necessary to collect the monthly payment and the Second Party is authorized to bring suit every month or at stated periods as Second Party may elect and any such suits shall not invalidate the purpose of this contract but this contract shall be and is given and held as a continuing contract beginning with its date hereof and the payments to be made during the natural life of the Second Party. In the event the First Party shall fail or refuse to pay off the liens against the real estate coveyed by the Party of the First Part to the Second Party, as is hereinabove mentioned, then and in that event Second Party may bring suit and enforce the obligator to make such payment in any Court having jurisdiction of the amount involved, and First Party covenants that said suit may be brought either upon each separate obligation as and when same becomes due *277 or by consolidating such of the items on which payments have accrued and are unpaid, as Second Party may elect. It is further especially contracted that this is a settlement made by and between First Party and Second Party of their property rights as of this date and that the Parties hereto have covenanted to live separate and apart from each other and that this instrument shall be construed as a separation agreement and as a settlement of the separate property rights of the Parties who sign hereto. IN TESTIMONY WHEREOF, said First and said Second Parties have hereto set their hands in duplicate on the day and date first above written. /s/ J. W. Wilson First Party /s/ Josephine G. Wilson Second Party STATE OF TEXAS, COUNTY OF DALLAS: SS. BEFORE ME, the undersigned authority, on this day personally appeared J. W. WILSON, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed. GIVEN UNDER MY HAND AND SEAL OF OFFICE, This 30th day of January, A.D. 1935. /s/ J. R. Osbourne, Notary Public, Dallas, County, Texas. STATE OF TEXAS, COUNTY OF DALLAS: *278 SS. BEFORE ME, the undersigned authority, on this day personally appeared JOSEPHINE G. WILSON, wife of J. W. WILSON, known to me to be the person whose name is subscribed to the foregoing instrument and having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said Josephine G. Wilson acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it. GIVEN UNDER MY HAND AND SEAL OF OFFICE, This 30th day of January, A.D. 1935. /s/ J. R. Osbourne, Notary Public, Dallas, County, Texas. On November 30, 1936, Josephine obtained a judgment of divorce issued by The District Court of Dallas County, Texas. In its judgment, the court, after specifically ordering Jesse to pay Josephine "the sum of $150.00 per month on the first day of each and every month during" her life and ordering the delivery to her of eight policies of insurance upon the life of Jesse and that he constitute her irrevocably the beneficiary in each policy and pay the premiums thereon until their maturity, further provided that *279 "all other terms and provisions of said agreement (the January 1935 separation agreement) between the parties hereto are hereby incorporated and made a part of this judgment." In accordance with the separation agreement and the judgment of divorce, Josephine took as her sole property all of the realty and personalty therein accorded to her, and Jesse acquired all of the personalty therein accorded to him including the bookie and loan businesses. Jesse, however, failed to discharge the encumbrances upon the real estate, failed to pay premiums upon the insurance policies, and after a period failed to make more of the monthly payments to Josephine therein provided for. Josephine paid the liens upon the realty, but all but one of the insurance policies lapsed for nonpayment of premiums. Josephine, at Jesse's request, surrendered the remaining policy for its cash surrender value and gave the proceeds to him. As the result of an action subsequently instituted by Josephine in The District Court of Dallas County to enforce payment of the $150 monthly payments called for by the separation agreement and the judgment of divorce, that court, on March 2, 1954, issued its judgment against Jesse *280 and in favor of Josephine in the amount of $9,450, representing 63 unpaid monthly installments plus interest accumulated to that date in the amount of $2,008.62. The judgment was paid by Jesse in 1955 plus all subsequent monthly installments falling due during that year. The court accompanied its judgment with its findings of fact and conclusions of law. One of the facts found by the court is as follows: The $150.00 per month payments provided for in said separation agreement were in consideration for Plaintiff's portion of the community property then owned by plaintiff and defendant, and such payments were in lieu of an accounting and settlement of said community property then in the possession of the defendant. One of the conclusions of law reached by the court is as follows: The separation agreement was not void as constituting an agreement to pay permanent alimony to a divorced wife. The proceedings leading to the judgment, findings of fact, and conclusions of law were adversary in nature and resulted from a hearing before the court during which both parties were present and represented by counsel. Regardless of the actual value of the bookie and loan businesses acquired *281 as his separate property by Jesse by virtue of the separation agreement and the judgment of divorce, the parties to the agreement at the date of its execution believed it to provide for an equitable and equal division of their community property. The granting of items of community property one to the other was in consideration of like grants one to the other and the amounts of her separate funds theretofore given to Jesse by Josephine. The $150 monthly payments by Jesse to Josephine in 1955 were in lieu of an accounting for community property and the proceeds thereof, and were not paid for the support and maintenance of Josephine. Opinion This record is beclouded by the fact that in several crucial instances the testimony of Jesse and Josephine is diametrically opposed. With all due regard to the bitter feelings toward each other exhibited by them as witnesses in this proceeding, we have concluded from their respective demeanor on the witness stand, their manner of testifying, and the factual probabilities resulting from their marital relationship, and the circumstances surrounding the execution of their separation agreement and subsequent divorce, that Josephine's testimony *282 is more truthful and worthy of credence than that of Jesse. Because Jesse at the time of the divorce was engaged in a business (gambling) which was unlawful under state law and because he was at that time and subsequent thereto operating a usurious loan business as his principal source of income, we have not been overly impressed with any sense of moral stability on his part which would be conducive to his truthfulness even under oath. On the other hand, we are satisfied that Josephine, although hampered by the passage of about 25 years since the occurrence of the events here in controversy, has in a fair and straight-forward manner given as truthful an account of those events as was possible. We believe and have found as fact that on the date of the separation agreement Jesse had obtained from Josephine considerable property which was not a part of their community property. Although we have not been able on this record to evaluate the property acquired by Jesse under the terms of the separation agreement and the judgment of divorce, we are convinced and have found that he believed the division of their community to have been fair and equitable. Indeed, the divorce court has explicitly *283 so determined. We are also impressed by the fact that Jesse waived any notice of hearing in the divorce action and that, when suit was brought by Josephine to collect unpaid monthly $150 payments provided for by the agreement and divorce judgment, he did appear and contest her claim which resulted in a judgment in her favor for such payments and an express finding of fact by the court that the consideration for such payments was Josephine's "portion of the community property * * * and such payments were in lieu of an accounting and settlement of said community property then in the possession of the defendant." Although we find no definition of alimony in Texas law, we assume the term at least includes moneys paid by one spouse for the support and maintenance of the other. We therefore think it at least significant that the divorce court in its conclusions of law expressly held that the separation agreement was not void as providing for the payment of alimony to a divorced wife. The most significant fact leading to our decision is that, although the $150 payments in controversy were periodic in nature and made in pursuance of both an agreement incidental to a divorce and in fact incorporated *284 in the divorce judgment, neither the parties to the divorce, the divorce court, nor the court which rendered judgment for the collection of those payments did consider or could have considered the payments to be in discharge of an obligation which has been imposed upon Jesse because of the marital or family relationship. This is so because under Texas law there is no obligation on the part of a man to support or maintain a divorced wife. In fact, nonsupport in and of itself is not even a ground for divorce in that State. From the entire record and that portion of the testimony of the petitioners which we believe, we have found as a fact that the amounts paid by Jesse to Josephine in pursuance of the agreement of January 1935 and the judgment of divorce were not paid for her support and maintenance. We therefore sustain the deficiency determined against petitioners Wilson and find no deficiency in the income tax of petitioners Woolf for the taxable year 1955. Decision will be entered for the respondent in Docket No. 78607. Decision will be entered under Rule 50 in Docket No. 78706.